**Byron Ashley PARKER, Appellant,**

v.

**DEPARTMENT OF JUSTICE.**

**No. 90–5070.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 1991.

Decided June 4, 1991.

See also 378 S.E.2d 677.

Richard E. Young, Washington, D.C., for appellant.

Melanie Ann Pustay, Attorney–Advisor, Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, Washington, D.C., for appellee.

Before MIKVA, Chief Judge, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Byron Ashley Parker ("Parker" or "appellant") appeals the District Court's grant of summary judgment in favor of the Department of Justice ("DOJ") in his action for disclosure of certain information pursuant to the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552 (1988). *Parker v. United States Dep't of Justice*, Civil Action No. 88–0760 (D.D.C. Feb. 28, 1990). The District Court's grant of summary judgment rested on the basis that the identity of confidential informants and the information provided by the informants is exempt from disclosure under FOIA Exemption 7(D), 5 U.S.C. § 552(b)(7)(D). We affirm.

I. BACKGROUND

The Atlanta Field Office of the Federal Bureau of Investigation ("FBI" or "Bureau") opened an investigation of Parker upon receiving a request for assistance from the Douglas County Sheriff's Department and the Georgia Bureau of Investigation in locating eleven-year-old Christine Ann Griffith after local authorities unsuccessfully searched for her for three days following her disappearance in Douglasville, Georgia. Parker soon became a tar-

get of FBI, State, and local investigations. The FBI participated in interrogations of Parker, interviewed other persons about Parker, and administered a polygraph examination to Parker at its Atlanta Office. *See Parker v. State*, 256 Ga. 543, 350 S.E.2d 570, 571–72 (1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). Based on their investigations, the FBI and local law enforcement personnel identified Parker as the person who kidnapped, raped, and brutally murdered the child. Consequently, Parker was charged, tried, and convicted for his crimes, and sentenced to death in November of 1984. On appeal, the Georgia Supreme Court overturned Parker's rape conviction, but upheld his murder conviction and death sentence. *Parker v. State*, 255 Ga. 167, 336 S.E.2d 242 (1985), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 *reh. denied*, 481 U.S. 1060, 107 S.Ct. 2206, 95 L.Ed.2d 861 (1987). After exhausting direct appeals of the murder conviction and death sentence, Parker petitioned for a writ of habeas corpus, which is currently pending before the Superior Court of Butts County, Georgia. *See Parker v. Zant*, Civil Action No. 87–V–1075 (Ga.Super.Ct., Butts Co.).

On October 2, 1987, Parker requested access to any records pertaining to the investigation of himself or investigations relating to Christine Ann Griffith maintained by either the FBI Headquarters in Washington, DC, or its Atlanta Field Office pursuant to FOIA. Parker seeks access under FOIA to the FBI information to assist him in his claims pending in the State habeas corpus proceeding.

In response to Parker's FOIA request, the FBI located 374 pages of information, but released only 104 pages of redacted documents. The FBI denied Parker access to the remaining 270 pages of material on the basis of Exemptions 7(C), 7(D), and 7(E) of FOIA, 5 U.S.C. § 552(b)(7)(C) (protects against unwarranted invasion of personal privacy), (7)(D) (protects confidential source

or information), and (7)(E) (safeguards investigative techniques and procedures). Parker sought access to the balance of the material, exhausted all administrative remedies, and then filed this FOIA action in the District Court on March 21, 1988.

The DOJ filed a *Vaughn* index [1] on June 16, 1988, consisting of the 104 edited pages previously released to Parker and a form for each document completely withheld, plus the declaration of FBI Agent Angus B. Llewellyn describing the codes used and exemptions claimed in the index. Appellant filed a *Motion For Clarification of Defendant's* Vaughn *Index*, seeking to discover whether any of the confidential informants whose identities are being protected by the FBI pursuant to Exemption 7(D) are also witnesses who testified against Parker at his criminal trial. On February 28, 1990, the District Court denied Parker's motion, rejected his request for *in camera* review of the withheld documents, and granted the DOJ's motion for summary judgment. Parker filed this appeal on March 9, 1990.

On June 28, 1990, a panel of this Court denied Parker's motion for summary reversal and granted the FBI's motion for summary affirmance on the applicability of FOIA Exemptions 7(C) and 7(E), but denied summary affirmance with respect to Exemption 7(D), the exemption relevant to the possible FBI informants. *Parker v. United States Dep't of Justice*, No. 90–5070 (D.C.Cir. June 28, 1990).

## II. DISCUSSION

This case presents a single issue: whether information obtained in confidence by the FBI and withheld from disclosure pursuant to FOIA Exemption 7(D) must nonetheless be made available to the appellant on the ground that the "confidential sources," by testifying at public trials concerning some of their communications to the FBI, "waived" the FBI's right to with-

---

1. *See Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (agency must itemize and index documents to correlate justifica-

tions for refusal to disclose with portions of document claimed to be exempt from disclosure).

hold the informants' identities and the information they provided.

Under FOIA, "virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975).

Exemption 7(D) of the FOIA provides in pertinent part:

> This section does not apply to ... records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). A person is a confidential source "if the person provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." S.REP. No. 1200, 93d Cong., 2d Sess. 13 (1974), U.S.CODE CONG. & ADMIN. NEWS, 6267, 6291 ("Conference Report"). *See also Irons v. FBI,* 880 F.2d 1446, 1447 (1st Cir.1989) (*en banc*) ("*Irons*"); *Birch v. United States,* 803 F.2d 1206, 1212 & n. 52 (D.C.Cir.1986).

■ Parker argues that the District Court erred in holding that the FBI properly invoked Exemption 7(D) to withhold the identity of and information provided by informants under implied assurances of confidentiality. We disagree. The law of the Circuit is clear: we presume that information obtained by an agency during the course of a criminal investigation has been procured pursuant to an assurance of confidentiality. *Dow Jones & Co. v. United States Dep't of Justice,* 908 F.2d 1006, 1010 (D.C.Cir.1990) ("*Dow Jones I*"), reh'g denied en banc, 917 F.2d 571 (D.C.Cir.1990)

("*Dow Jones II*"); *Schmerler v. FBI,* 900 F.2d 333, 337 (D.C.Cir.1990). Indeed, " 'in the absence of evidence to the contrary, promises of confidentiality are "inherently implicit" when the FBI solicits information.' " *Schmerler,* 900 F.2d at 337 (quoting *Keys v. United States Dep't of Justice,* 830 F.2d 337, 345 (D.C.Cir.1987)). Moreover, we have stated clearly and unequivocally that once an agency establishes that it received the requested information in confidence, "the source will be deemed a confidential one, and both the identity of the source and the information he or she provided will be immune from FOIA disclosure." *Dow Jones I,* 908 F.2d at 1010 (footnote omitted). Thus, as long as the Bureau demonstrated that "the information was solicited during the course of law enforcement investigations, the FBI raises a presumption that assurances were given" in return for the information. *Schmerler,* 900 F.2d at 337.

■ In the present case, Parker argues that the FBI has not established that all the protected sources provided their information under circumstances of confidentiality, but the FBI demonstrated, and Parker has conceded for purposes of this appeal, that the requested records were compiled for law enforcement purposes. There is no substantial question of material fact that "the information was solicited during the course of [a] law enforcement investigation[ ]." Parker failed to overcome the almost irrebuttable presumption that assurances were given in exchange for the information by providing "absolutely solid evidence showing that the source of an FBI interview in a law enforcement investigation has manifested complete disregard for confidentiality." *Dow Jones I,* 908 F.2d at 1011 (footnote omitted). In addition, Parker offers no support for a finding that "the exact information given to the FBI has already become public, and the fact that the informant gave the same information to the FBI is also public." *Id.* We have neither the power nor the inclination to depart from this Court's precedents in *Dow Jones I,* the denial of rehearing *en banc* in *Dow Jones II,* and *Schmerler.*

*Humphrey v. Baker,* 848 F.2d 211, 214 (D.C.Cir.1988) (panel bound to follow and apply circuit law); *Melcher v. Federal Open Market Committee,* 836 F.2d 561, 565 & n. 4 (D.C.Cir.1987) (same). We therefore affirm the District Court's finding that Parker failed to overcome the presumption that FBI sources gave information under an implied assurance of confidentiality.

■ Parker argues that even if FBI informants provided information confidentially, the informants waived the confidential status of their identities and the information to the extent that they testified at Parker's trial, an argument rejected by the First Circuit *en banc* in *Irons,* 880 F.2d at 1456.

With a few exceptions noted in *Irons, supra,* courts considering this argument have agreed that a government agency is not required to disclose the identity of a confidential source or information conveyed to the agency in confidence in a criminal investigation notwithstanding the possibility that the informant may have testified at a public trial. *See, e.g., Irons,* 880 F.2d at 1456; *Republic of New Afrika v. FBI,* 656 F.Supp. 7, 13 (D.D.C.1985) (FBI not required to confirm or deny that it was invoking Exemption 7(D) for a source who later testified in criminal proceedings), *aff'd mem. Provisional Government of Republic of New Afrika v. American Broadcasting Co.,* 821 F.2d 821 (D.C.Cir. 1987); *L & C Marine Transp., Ltd. v. United States,* 740 F.2d 919, 925 (11th Cir. 1984) ("per se limitation on disclosure under 7(D) does not disappear if the identity of the confidential source later becomes known through other means"); *Kiraly v. FBI,* 728 F.2d 273, 278–79 & n. 8 (6th Cir.1984) (FBI not required to disclose whether witness at trial was FBI informant because it would undermine importance of Exemption 7(D)); *Radowich v. United States Attorney,* 658 F.2d 957, 960 (4th Cir.1981) (law enforcement agency need not disclose information about source's identity even though it is already publicly known); *Lame v. United States Dep't of Justice,* 654 F.2d 917, 925 (3d Cir.1981) ("subse-quent disclosure of information originally given in confidence does not render nonconfidential any of the information originally provided"); *Keeney v. FBI,* 630 F.2d 114, 119 n. 2 (2d Cir.1980) (public identification of sources does not render them nonconfidential); *Scherer v. Kelley,* 584 F.2d 170, 176 n. 7 (7th Cir.1978), *cert. denied,* 440 U.S. 964, 99 S.Ct. 1511, 59 L.Ed.2d 778 (1979) (court rejected premise that a source's confidentiality waived by mere act of testifying).

The First Circuit decision in *Irons, supra,* fully presents the arguments of both Parker and the FBI. In that case, plaintiffs, historians researching the McCarthy Era, sued the government under the FOIA, 5 U.S.C. § 552, to obtain information contained in the FBI's Smith Act investigation files that would reveal what FBI informants, who testified at the Smith Act trials in the 1950s, had told the FBI about alleged communist leaders. Those plaintiffs argued, as Parker argues here, that the otherwise confidential information should have been made available to the plaintiffs because the "confidential sources," by testifying at public trials concerning some of the confidential communications made to the FBI, waived the FBI's right to invoke Exemption 7(D). *Irons,* 880 F.2d at 1447. The initial appeals panel affirmed the District Court's holding that, because the informants had testified in public about the subject at issue, much of the requested information no longer came within Exemption 7(D). *Id.* (citing *Irons v. FBI,* 851 F.2d 532 (1st Cir.1988) (opinion withdrawn and vacated)). The panel reasoned that by testifying in public, FBI informants waived protection under FOIA Exemption 7(D), "but only *insofar as they then actually revealed* the information in question *or insofar as the information in question would have fallen within the 'hypothetical scope of cross examination.'*" *Irons,* 880 F.2d at 1447 (quoting *Irons v. FBI,* 851 F.2d at 532) (emphasis in *Irons*).

On rehearing, the *en banc* court significantly modified the panel opinion, concluding that public testimony by "confidential sources" does not waive the FBI's right to invoke Exemption 7(D) to withhold the identity of a confidential source or informa-

tion furnished by a confidential source not actually revealed in public. *Irons,* 880 F.2d at 1456–57. The majority in *Irons* provides five persuasive reasons why the concept of "waiver" does not apply to the FOIA Exemption 7(D).

■ First, the language of the Exemption explicitly allows the government to withhold "information furnished by a confidential source" and the identity of the source, but says nothing at all about waiver. It is axiomatic that the starting point in statutory interpretation is "the language [of the statute] itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). The second clause of Exemption 7(D) expressly permits the government to withhold "information furnished by a confidential source" to a "criminal investigation ... or national security intelligence investigation." 5 U.S.C. § 552(b)(7)(D). Absent from the language of Exemption 7(D) is any mention of "waiver." Thus, this Court and our sister circuits considering the question have interpreted Exemption 7(D) literally and have held that once the agency receives information from a " 'confidential source' during the course of a legitimate criminal investigation ... *all* such information obtained from the confidential source receives protection." *Lesar v. United States Dep't of Justice,* 636 F.2d 472, at 492 & n. 114 (D.C.Cir.1980) (emphasis added). *See also Irons,* 880 F.2d at 1449 (1st Cir.1989); *Kiraly,* 728 F.2d at 278–80 (6th Cir.1984); *Lame,* 654 F.2d at 923 (3d Cir.1981); *Scherer,* 584 F.2d at 176 n. 7 (7th Cir.1978). Moreover, contrary to Parker's contention, the judiciary is not to balance interests under Exemption 7(D). *See Irons,* 880 F.2d at 1449; *Lesar,* 636 F.2d at 492.

Second, the extensive legislative history of Exemption 7(D) indicates that Congress intended we interpret the Act literally. Congress enacted Exemption 7(D) to assist federal law enforcement agencies to obtain, and to maintain, confidential sources, as well as to guard the flow of information to these agencies. *See Irons,* 880 F.2d at 1449–50 (discussing origin of second clause of Exemption 7(D)); *Birch,* 803 F.2d at 1212 ("paramount objective of Exemption 7(D) ... is to keep open the Government's channels of confidential information"); *Church of Scientology of California v. United States Dep't of Justice,* 612 F.2d 417, 423–26 (9th Cir.1979) (discussing legislative history and finding that Congress enacted Exemption 7(D) "so that law enforcement agencies would not be adversely affected in their lawful investigatory duties"). *See also* 120 CONG.REC. 3461 (1974) (joint statement of Sen. Edward M. Kennedy and Rep. William S. Moorhead) (responding to President Ford's criticism that initial version of FOIA would hinder law enforcement efforts); *Id.* at 34167 (statement of Rep. William S. Moorhead) (same); *Id.* at 36871 (statement of Sen. Philip A. Hart) (same); *Id.* at 36877–78 (statement of Sen. Robert C. Byrd) (same).

The legislative history is clear and unambiguous. In enacting Exemption 7(D), Congress sought to provide a broad exemption for law enforcement under the Act. *Irons,* 880 F.2d at 1451–52. Thus, absent a clear indication of Congress's legislative intent to the contrary, "the statute's plain language must 'be regarded as conclusive.' " *Id.* at 1452 (quoting *CPSC v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

Third, decisions in the circuits have used broad language to describe the application of the Exemption and have interpreted it to apply irrespective of the subsequent public identification of the source or portions of the information (*see* cases collected in *Irons,* 880 F.2d at 1452 and at 379, *supra* ). Fourth, no case finding a "waiver" has used the word in any sense that applies in the type of case now before the Court. Fifth, judicial efforts to create a "waiver" exception to the Exemption are contrary to the statute's intent to provide workable rules. *Irons,* 880 F.2d at 1449–56.

We find the First Circuit's analysis of the waiver issue in *Irons* both persuasive and consistent with the interpretation of this Court and the other circuits. In fact, only two cases holding that actual testimony waives the right to nondisclosure have

come to our attention. Both are from district courts and one of them is unpublished. *See Bretti v. United States Dep't of Justice,* No. 88–CV–328, slip op., 1990 WL 84366 (N.D.N.Y. June 18, 1990), and *Powell v. United States Dep't of Justice,* 584 F.Supp. 1508, 1529–30 (N.D.Cal.1984). *Bretti,* however, unremarkably holds that a *known* informant waived any claim to a 7(D) exemption with regard to his identity or with regard to information contained on the tapes and transcripts which were admitted into evidence. *Bretti,* slip op. at 3. Similarly, *Powell* only addresses the waiver of the right to withhold a *known* source's identity once the source has testified; it does not address the issue of disclosure of the information furnished by the source. *Powell,* 584 F.Supp. at 1529–30 ("where the government has already revealed the identities of sources in previous FOIA releases, it has clearly waived any claim to withhold their identities to protect confidentiality.").

There are additionally labor law cases cited by the dissent in *Irons* and by the appellant in the present case, *United Technologies Corp. v. NLRB,* 777 F.2d 90, 94–95 (2d Cir.1985), and *Van Bourg, Allen, Weinberg & Roger v. NLRB,* 751 F.2d 982, 986 (9th Cir.1985). As the *Irons* court noted, those cases are inapposite. They "concern an issue different from the one before us. They consider whether a source, knowing he is likely to testify at the time he furnishes information to the agency, is, or remains after testimony, a 'confidential source' within the meaning of the statute." *Irons,* 880 F.2d at 1455 (citation omitted). Be that as it may, these labor cases do not involve criminal law enforcement, but rather civil law enforcement. Hence, they do not address the issue raised by the second clause of Exemption 7(D) which protects "information compiled by a criminal law enforcement authority in the course of a criminal investigation [and] furnished by a confidential source." *Id.* (quoting 5 U.S.C. § 552(b)(7)(D)).

The dissent in *Irons,* whose arguments Parker propounds in the present case, relies almost exclusively on the legislative history of the FOIA to argue that a proper construction of Exemption 7(D) requires the court to find a waiver "coextensive with the scope of relevant cross-examination" where an FBI informant actually discloses confidential information in a public trial. *Irons,* 880 F.2d at 1462 (Selya, J., dissenting in part) (quoting *United States v. Black,* 767 F.2d 1334, 1341 (9th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 557 (1985)). Such reliance on the legislative history is unconvincing in light of the clear language of the Act, extensive legislative history to the contrary, and the courts' existing precedents and interpretations and applications of the Act to FOIA requests. Furthermore, in this case, Parker has not established either of the predicates necessary to the *Irons* dissent's theory. First, Parker cannot show that an FBI informant actually testified at his trial and thereby disclosed his identity as an FBI informant. *Irons,* 880 F.2d at 1463, 1465 (Selya, J., dissenting in part). It is readily apparent from Parker's claim that the District Court and the government, which went to great lengths to protect the confidentiality of the informants' identities, succeeded in their efforts. Otherwise, Parker would have requested specific information regarding specific FBI informants known to have testified at his murder trial. *Cf. Schmerler v. FBI,* 900 F.2d at 339 (citing *Irons v. FBI,* 811 F.2d 681, 687–88 (1st Cir.1987) (panel opinion) (First Circuit observed that confidential source who might testify at trial might successfully "camouflage his true role notwithstanding his court appearance" and thereby remain unknown)). Second, Parker cannot show that the alleged informant testified about the exact information disclosed to the FBI. *Irons,* 880 F.2d at 1463, 1465 (Selya, J., dissenting in part); *see also Dow Jones I,* 908 F.2d at 1012.

Accordingly, we reject Parker's claim that the FBI waived its Exemption 7(D) protection. Moreover, we decline to adopt Parker's suggestion that we follow the *Irons* dissent, as we find the majority decision in *Irons* persuasive and consistent with this Circuit's holdings in *Dow Jones* and *Schmerler.*

### III. CONCLUSION

For the reasons set forth above, we conclude that the District Court did not err in denying Parker's request for disclosure of certain information protected under FOIA Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), and in granting the motion for summary judgment in favor of the DOJ. The decision of the District Court is therefore

*Affirmed.*